IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDY W.,[1]

            Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

No. 6:25-cv-00544-HZ

OPINION & ORDER

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, Oregon 97293

    Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Christopher Vieira
Special Assistant United States Attorney
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, Senior District Judge:

Plaintiff Brandy W. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the ALJ's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on June 2, 2020, alleging an onset date of March 1, 2020. Tr. 164, 166.[2] Her application was denied initially and on reconsideration. Tr. 235, 242.

On February 7, 2024, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 30. On February 22, 2024, the ALJ found Plaintiff not disabled. Tr. 25. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on advanced osteoarthritis throughout her body, migraines, severe chronic pain, a right knee replacement, fibromyalgia, severe social anxiety and panic attacks, posttraumatic stress disorder, bipolar disorder, hand and body tremors, and sleep

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

2 – OPINION & ORDER

apnea. Tr. 343. At the time of her application date, she was 44 years old. Tr. 24. She has a high

school education and no past relevant work experience. Tr. 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (in

social security cases, agency uses five-step procedure to determine disability). The claimant

bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her application date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "obesity; left knee osteoarthritis; status post right total knee arthroplasty; obstructive sleep apnea; migraine headache disorder; major depressive disorder; and posttraumatic stress disorder (PTSD)." Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following limitations:

> [S]he can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl, and can occasionally climb ramps and stairs, balance, and stoop. She must avoid concentrated exposure to hazards. The claimant must have the ability to wear tinted lenses indoors or outdoors, or otherwise control the brightness of light in the work environment, and must avoid work environments with greater than a moderate level of noise, as the term "moderate" is defined in the Selected Characteristics of Occupations. Additionally, she would be limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, and only occasional interaction with the public.

Tr. 20. The ALJ concluded that Plaintiff had no past relevant work. Tr. 24. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform, such as document preparer, addressing clerk, and touchup inspector. Tr. 24-25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff's sole argument is that the ALJ's step five findings are not supported by substantial evidence. Pl.'s Br. 1, ECF No. 12. Specifically, Plaintiff argues the Commissioner erred in failing to address rebuttal evidence as to Vocational Expert (VE) testimony regarding the number of jobs in the national economy for the positions of "addresser" and "touchup inspector." *Id.* at 5-9. The Court disagrees.[3]

---

[3] Plaintiff also argues that the ALJ erred in relying on VE testimony that Plaintiff could perform

5 – OPINION & ORDER

At step five of the sequential analysis, the ALJ must determine whether there are jobs in significant numbers in the national economy that the claimant can perform. 20 C.F.R. § 416.960(c)(1). To do so, the ALJ often uses a VE, an expert who has "expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citation modified). In rendering their testimony, VEs "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* (quoting SSR 00-4p (rescinded)); *see also* SSR 24-3p ("VEs may provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under our rules.").

"[A]n ALJ may rely on a [VE's] testimony concerning the number of relevant jobs in the national economy, and need not inquire *sua sponte* into the foundation for the expert's opinion." *Shaibi v. Berryhill* 883 F.3d 1109, 1110 (9th Cir. 2018). Indeed, VE Testimony is inherently reliable such that "a qualified [VE's] testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022) (citation modified). In order to challenge this evidence, a claimant must do so "at some point during administrative proceedings . . . ." *Shaibi*, 883 F.3d at 1103.

---

the job of "document preparer," which requires Level 3 reasoning. Pl. Br. 4-5. Any error in this regard is harmless because the ALJ identified two other jobs that Plaintiff could perform that exist in significant numbers in the national economy. *See* Tr. 25, 41 (93,000 jobs in the national economy for addresser and touchup inspector).

The ALJ need only address evidence that is "significant" and "probative." *Kilpatrick*, 35 F.4th at 1193 ("Requiring an ALJ to consider competing job numbers only if they constitute significant probative evidence is also in keeping with the background rule that in the absence of any contrary evidence, a vocational expert's testimony is one type of job information that is regarded as inherently reliable." (citation modified)). In determining whether this evidence is significant and probative, the court considers "whether there is support for . . . counsel's approach in generating job-number estimates . . . ." *White v. Kijakazi*, 44 F.4th 828, 836 (9th Cir. 2022). The court should undertake this analysis on a "case-by-case basis" and remand to the ALJ to address any inconsistency that arises from significant and probative evidence. *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023).

The crux of the issue in this case is whether the evidence is probative. In *Wischmann*, the Ninth Circuit addressed whether a letter submitted to the Appeals Council with job estimates from a program called Job Browser Pro constituted significant and probative evidence to contradict the VE's testimony that there were tens of thousands of jobs for the positions he identified. *Id.* at 501, 506. At the hearing, Plaintiff's counsel asked the VE how he calculated the number of jobs, and the VE testified that they used Job Browser Pro, "a computer software that is 'widely relied upon by vocational experts in estimating the number of relevant jobs available in the national economy.'" *Id.* (quoting *Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018)). On appeal, counsel submitted a letter that used DOT-specific codes and Job Browser Pro to suggest that there were only 6,105 jobs—not tens of thousands of jobs—available in the national economy. *Id.* at 503. Attached to the letter was a six-page printout that was never cited by the letter and that contained no information as to its source. *Id.* at 503-04. The data in the letter did not entirely correspond with the data in the printouts, and there was no information about the

7 – OPINION & ORDER

process by which the data were generated. *Id.* The Ninth Circuit concluded that the evidence was not significant or probative, emphasizing that the letter did not show that the data were produced by the same method as the VE or who produced the data—whether it was a VE with expertise or the attorney without any such expertise. *Id.* at 506-07. The circuit court concluded that the letter and attachments were not probative evidence. *Id.* at 507 ("[B]ecause an ALJ need not discuss evidence from a lay witness that the lay witness is not competent to provide, the uninterpreted data is not probative.").

This case presents many of the same issues as *Wischmann*. As a preliminary matter, the Court notes that Plaintiff's counsel at the hearing never inquired as to the source of the VE's job numbers. Tr. 41-42 (attorney declining to ask follow-up questions). The information provided by the VE could have come from Job Browser Pro or it could have come from another source, such as "the Bureau of Labor Statistics and [his] own individual labor market surveys." *Biestek*, 587 U.S. at 101 (citation modified). In other words, there is no information to show that Counsel's data—from Job Browser Pro—were produced using the same method as the VE. Thus, unlike in many of the cases that Plaintiff cites, the information cited by Plaintiff "do[es] not give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve." *Wischmann*, 68 F.4th at 507; *cf. White*, 44 F.4th at 837 (concluding that the claimant had shown that the job estimates were produced using the same methodology as the VE); *Powley v. Bisignano*, 169 F.4th 1158, 1162-63 (9th Cir. 2026) (noting the claimant's counsel asked the VE to identify the sources for his job numbers, including the specific method used).

Further, the letter submitted by counsel suffers from some of the same defects as the letter provided to the Appeals Council in *Wischmann*. The Court acknowledges that in this case that the data is recent, Tr. 446, the numbers in the letter correspond with the printouts, *compare*

Tr. 445 (noting only 1,971 positions for addressing clerk and 1,012 positions for touchup inspector) *with* 447, 449 (same), and that counsel tried to provide information about the process by which the data were generated, Tr. 446, 451-53. But another fundamental flaw exists here: the letter was produced by counsel without any specific vocational expertise with a program that is intended to be used by an individual with experience and expertise in using the program or developing job numbers. Tr. 446 ("Counsel produced this printout using an installation of Job Browser Pro in June 2023 . . . and April 2024 . . . as part of an ongoing survey of frequently-cited jobs in Social Security cases."); *see Wischmann*, 68 F.4th at 507 ("[E]xperience in using the program and interpreting the output would ordinarily be necessary to produce probative results."). The step-by-step printout provided by counsel also appears to be missing information. The printout ends with an image of a page containing employment numbers for entire the Occupational Employment Survey (OEWS) Group for "Production Workers," which includes many different DOT occupations.[4] Tr. 453. It does not show how DOT-specific numbers were generated. *cf. Powley*, 169 F.4th at 1168-69 (noting that counsel provided 91 pages of supporting evidence with extensive information as to the source and method). Like in *Wischmann*, the information here is therefore more akin to lay testimony that the ALJ need not discuss. As the evidence is not probative, the Court affirms the ALJ's decision.

///

///

///

///

---

[4] The Court also notes that this step-by-step guide does not appear to address either of the jobs at issue here.

9 – OPINION & ORDER

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:_____June 7, 2026_____.

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge

10 – OPINION & ORDER